**COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff,**

v.

**Michael D. TARBUCK, Defendant.**

**Civ. A. No. 93–2112.**

United States District Court, W.D. Pennsylvania.

Feb. 1, 1994.

Deborah P. Powell, Thorp, Reed & Armstrong, Pittsburgh, PA, for plaintiff.

Sanford S. Finder, Finder, Allison & Graham, Washington, PA, for defendant.

## OPINION

STANDISH, District Judge.

Plaintiff, Columbia Gas Transmission Corporation (Columbia), filed this civil action on December 21, 1993, seeking injunctive relief against defendant, Michael D. Tarbuck (Tarbuck). Specifically, Columbia seeks an order directing Tarbuck to remove excess dirt and rock from a right-of-way owned by Columbia. Further, Columbia seeks to enjoin Tarbuck from further dumping of dirt and rock on the right-of-way. After a hearing on Columbia's motion for preliminary injunctive relief, and for the reasons set forth below, the court concludes that the motion will be granted.

*Findings of Fact*

Based on the present record, the court concludes that it is reasonably probable that the following facts will be established at a final hearing:

1. Columbia is a Delaware corporation with its principal place of business in Charleston, West Virginia. Columbia is engaged in the business of transporting natural gas in interstate commerce for ultimate consumption by the general public. Tarbuck is a citizen of the Commonwealth of Pennsylvania.

2. By deed dated April 25, 1991, two adjacent parcels of property located in South Strabane Township, Washington County, Pennsylvania were conveyed to Tarbuck by the children of Leslie and Carmel Valitutti. (Exhibit 5). The "first parcel" referred to in the deed was formerly owned by Carmel and Josephine Passalacqua. On August 15, 1946, Columbia's predecessor in interest, The Manufacturers Light & Heat Company (Manufacturers), appropriated a strip of land over the Passalacqua property "for the purpose of constructing, operating, maintaining, inspecting, renewing and removing a 20 inch pipe line to be used for the transportation and distribution of gas." The documents relating to the appropriation specifically describe the right-of-way as being 50 feet in width. (Exhibits 22 and 23). On August 8, 1963, the Passalacquas conveyed the "first parcel" to Leslie and Carmel Valitutti. The deed recording this transfer specifically reserves Manufacturers' right-of-way over the property. (Exhibit 24). The Valituttis conveyed this property to their children by deed dated July 26, 1990. (Exhibit 25). The right-of-way on the "first parcel" is located on the back of Tarbuck's property.

3. The "second parcel" referred to in Tarbuck's deed was formerly owned by Walker and Elizabeth Wylie. On April 18, 1946, the Wylies granted the following right-of-way over their property to Manufacturers:

"... the right to lay a 20 inch pipe line, and maintain, operate, repair and remove said lines along a line which has been surveyed for the same over and through their land situate in South Strabane Township Washington County, State of Pennsylvania, bounded and described as follows: On the North by lands of Pittsburgh Coal Co.; George Puskarich
On the East by lands of State Highway, old route 19

On the South by lands of Mr. J.I. Miller, et al.

On the West by lands of Mrs. Tillie Lewis; Pittsburgh Coal Company

with the right of ingress, egress and regress to and from the same, ...

(Exhibit 1).

The width of this right-of-way is not specified. At some point in time, Leslie and Carmel Valitutti acquired the "second parcel" from the Wylies, subject to Manufacturers' right-of-way.[1] By deed dated September 26, 1990, the Valituttis conveyed the "second parcel" to their children. The right-of-way on the "second parcel" is located near Route 19, a major highway, on the front of Tarbuck's property.

4. Columbia is the present owner of the 20–inch high pressure, natural gas transmission pipeline which traverses the two parcels of property referred to in Tarbuck's deed. This major pipeline is known as Line 1570, and it transmits 200 million cubic feet of gas per day.[2] The normal depth of "cover" for a gas pipeline, such as Line 1570, is three to five feet.[3] Line 1570 services 5 or 6 commercial customers in the vicinity of Tarbuck's property, including the Meadowlands Race Track, and approximately 30 residential customers.

5. Pursuant to Federal regulations, Columbia is required to conduct regular inspections and tests of Line 1570, including facility patrols, instrument leak surveys and electrical surveys. During a facility patrol, which is conducted every 3 months, a representative of Columbia walks over the right-of-way to check for erosion, landslides or the smell of gas. When an instrument leak survey is conducted, instruments are used to check for leaks because the instruments are more sensitive than a person's sense of smell. With

---

1. It is unclear when the property was transferred from the Wylies to the Valituttis.

2. Line 1570 was installed by Manufacturers in 1947 or 1948. It has the capacity to transmit 400 million cubic feet of gas per day and to supply natural gas to 100,000 homes. A section of Line 1570 on Tarbuck's property was replaced in 1981. During the replacement, Columbia utilized the full width of its right-of-way.

3. Under Federal regulations, relating to the design of gas pipelines, Line 1570 was designed for no more than 6 feet of cover. If the cover over Line 1570 exceeds 6 feet, Columbia is in violation of Federal regulations, which could subject it to civil and criminal penalties.

respect to electrical surveys,[4] Columbia conducts the following tests on Line 1570:

a. Every two months, Columbia checks its pole rectifiers for leaks.

b. Once a year, Columbia checks its test stations, which are located on the edge of Route 19, for leaks.

c. Every ten years, Columbia performs close interval testing over the pipeline with voltage measuring equipment.[5] All of the tests performed by Columbia should be conducted as close to the center of the pipeline as possible. However, excess cover can make it difficult to locate the exact position of the pipeline.

6. Jane Zaremba, a Transmission Agent for Columbia, is responsible for locating Columbia's pipelines and for informing developers what they can, and cannot do, with respect to rights-of-way owned by Columbia. She is familiar with Line 1570.[6] On February 7, 1991, Ms. Zaremba met with Tarbuck at her office, and they went to Tarbuck's property. Ms. Zaremba showed Tarbuck the location of Line 1570 and she explained the restrictions that Columbia's right-of-way placed on his plans for developing the property. A "Location of Gas Lines" form was completed for Line 1570. (Exhibit 3). On that form, the pipeline is described as a 20-inch line, which is 300 feet in length. The form also indicates that Line 1570 is buried at a maximum depth of 60 inches of cover and a minimum depth of 30 inches. Ms. Zaremba noted that Columbia's right-of-way was 50 feet wide and that Tarbuck must stay 25 feet to either side of the pipeline when developing the land. He was informed that no additional cover could be placed on top of Line 1570. He was also informed that "padding" must be used if any construction equipment was to be used on the right-of-way.[7] Tarbuck signed the form in Ms. Zaremba's presence, acknowledging that the approximate location of the pipeline had been marked by Ms. Zaremba and that he had received a copy of Columbia's GUIDELINES FOR CONSTRUCTION ACTIVITIES ON RIGHTS-OF-WAY AND IN THE VICINITY OF GAS PIPELINES.[8] A copy of the form, including the construction guidelines, was given to Tarbuck.

7. In the spring of 1991, after her meeting with Tarbuck, Ms. Zaremba observed that dirt had been placed on Columbia's

---

4. To enable Columbia to conduct the electrical tests, Line 1570 is coated with a protective substance that prevents corrosion, which is the primary cause of leaks. This type of protection is called cathodic protection. According to the testimony of Columbia's witnesses, the coating is very effective if it is not disturbed. However, secondary stresses from excess cover on the pipeline can cause the protective coating to crack, allowing water to get in and corrode the pipe. In this connection, Milan Spanovich, a civil engineer and an expert in soil mechanics, testified on Tarbuck's behalf. He denied that excess cover on Line 1570 would affect its durability by causing secondary stresses which contribute to corrosion. However, the court does not find Mr. Spanovich's testimony to be persuasive. First, Mr. Spanovich's expertise is limited to the use of soil in foundations and the installation of water, sewer and drainage pipes. He has no experience in the installation and durability of gas pipelines. Second, he is not familiar with the Federal regulations governing gas pipelines, and he did not know that cathodic protection was mandated by those regulations. Finally, Mr. Spanovich failed to address the effect of excess cover on Columbia's ability to accurately test the pipeline for leaks or to make repairs.

5. A close interval test is presently scheduled for the summer of 1994. During this testing, the pipeline will be checked every 2½ feet for leaks with a volt meter. The voltage measuring equipment should be placed directly over the pipeline. However, the line locators do not work properly when excess cover is on the pipeline, resulting in questionable readings. As a result, the level of cathodic protection cannot be ascertained.

6. With respect to Columbia's maintenance of its right-of-way on Tarbuck's property, Ms. Zaremba testified that Columbia mows the right-of-way over Line 1570 every 3 years. A width of 50 feet is mowed.

7. Padding consists of making a "bridge" over the right-of-way with dirt to provide additional support for heavy equipment. Guideline No. 1 on the back of the "Location of Gas Lines" form specifically addresses the issue of padding. Unless otherwise directed by Columbia personnel, the additional cover used as padding during construction must be removed after construction. (Exhibit 8).

8. The GUIDELINES FOR CONSTRUCTION ACTIVITIES ON RIGHTS-OF-WAY AND IN THE VICINITY OF GAS PIPELINES are set forth in Exhibit 4.

right-of-way over Line 1570 and that grading was being done on the right-of-way.[9] A "riser" on the right-of-way was in danger of being disturbed, which could have resulted in the release of gas. Ms. Zaremba reported her observations to her boss. As a result, Columbia decided to remove the riser. To reach Line 1570 to remove the riser, Columbia's personnel had to dig down six feet. It was apparent from the sod or grass line that, during the construction activity on Tarbuck's property, an additional three feet of cover had been placed over Line 1570. Thereafter, Columbia closely monitored the construction activity on Tarbuck's property. When cover was again placed on Line 1570, Ms. Zaremba discussed the situation with Tarbuck, who claimed that he was merely "padding" the right-of-way.

8. In June of 1993, Columbia received information that Tarbuck was planning to grade his property. By letter dated June 22, 1993, another copy of Columbia's "Location of Gas Lines" form was sent to Tarbuck, together with another copy of Columbia's construction guidelines. On that form, it is noted that the depth of Line 1570 varies due to previous grading by Tarbuck. He was referred to Item No. 1 under Rights–of–Way in the construction guidelines, which provides:

\* \* \* \* \* \*

**RIGHTS–OF–WAY**

To maintain unobstructed rights-of-way to permit Columbia to adequately operate its pipelines, the minimum standards listed below are to be used as guidelines:

1.) The existing cover, or a minimum of 30 inches of backfill over the top of major pipelines, should be maintained. For landscaping or grading purposes, 4–feet maximum cover is permissble. (sic). The minimum cover over pipeline at all street and road crossings, including the adjacent ditch line, shall be 36 inches,

and 60 inches minimum cover at stream and river crossings.

\* \* \* \* \* \*

(Exhibits 7 and 8).

9. Ms. Zaremba continued to monitor Columbia's right-of-way over Line 1570, and, in November of 1993, she observed that more dirt was being hauled onto Tarbuck's property and dumped on top of Line 1570. Moreover, heavy equipment, including bulldozers, were crossing over the pipeline. Ms. Zaremba immediately called Tarbuck, who claimed that he was merely "padding" the pipeline. She explained the concept of "padding" to him, and she told him that the additional cover had to be removed from the top of the pipeline. In response, he stated, "Jesus, Jane, it's not like I'm committing a major felony."

10. On November 23, 1993, Ms. Zaremba reported the situation to James Weimer, Columbia's Operations Supervisor, and they returned to Tarbuck's property. At that time, they observed dirt being dumped by trucks and spread by bulldozers over the full width of Columbia's right-of-way. Moreover, the next day, November 24, 1993, additional dirt was dumped on the right-of-way. (Exhibits 9–15). As a result of the additional cover being placed by Tarbuck on Line 1570, it was difficult to locate the pipeline in some areas.

11. Columbia personnel again observed dirt being dumped on Columbia's right-of-way on December 8, 1993. Exhibits 19–21). On January 14, 1994, Columbia attempted to determine the depth of the dirt dumped on Line 1570 by digging six holes over the pipeline with a backhoe.[10] (Exhibit 26). The first test hole was dug at Station 2288 + 87. At a depth of six feet, Columbia personnel found glass, roots and foreign objects, which are not normally found in soil. The total depth of cover at the first test hole was 9 feet, and 6 feet of this cover had been placed over the pipeline by Tarbuck. The second test hole was dug at Station 2290 + 46, and it revealed a total depth of cover of 7 feet. The third test hole was dug at Station 2288 + 00,

---

9. The right-of-way is close to the berm of Route 19, and it is readily observable from the highway.

10. Samuel C. Bear, Columbia's Transmission Engineer, testified that the difficulty posed by excess cover over pipelines was demonstrated by the January, 1994 excavations.

and it revealed a total depth of 11 feet of cover.[11] The fourth test hole was dug at Station 2291.04, which was the closest test hole to Route 19. However, the pipeline was not exposed at this site and the total depth of cover was not determined. The fifth test hole was dug at Station 2290 + 75, and it revealed a total depth of cover of 8½ feet. The sixth and final test hole was dug at Station 2290 + 85, and it revealed a total depth of cover of 9 feet. (Exhibits 27–37).

12. If a leak occurred in Line 1570, Columbia's personnel would investigate the pipeline for gas migration. It would "bar" along Tarbuck's building, which is situated approximately 250 to 300 feet from the pipeline, and along Route 19 to search for the presence of gas. If the pipeline were buried at the normal depth of 3 feet, the bar would be inserted to the top of the pipeline. However, the depth of cover over a pipeline affects Columbia's ability to locate the pipeline.[12] With respect to the tendency of gas to migrate, Dana M. Debaets, an Area Superintendent for Columbia, testified that, if a leak in Line 1570 were to occur, the gas could migrate to Tarbuck's building or to Route 19. A large volume of gas could collect before being detected and it could be ignited by a door closing in Tarbuck's building or by a car driving along Route 19. Needless to say, the potential harm to persons and property is substantial.

13. Presently, Columbia is in violation of Federal regulations as a result of the excess cover on Line 1570, which is directly attributed to Tarbuck's construction activity, and it cannot continue to operate the pipeline under these conditions. Mr. Weimer, Columbia's Operations Supervisor, testified that there were three possible solutions to remedy Columbia's current non-compliance with Federal regulations. First, the pipeline could be raised to a depth of 3 feet, which would necessitate the replacement of Line 1570 with new pipe at a cost of approximately $100,000.00. Second, the pipeline could be removed from Tarbuck's property and relocated at a cost exceeding $1,000,000.00. Third, Tarbuck could remove the excess cover from Line 1570 at an estimated cost of $3,000.00 to $4,000.00.

*Conclusions of Law*

Based on the foregoing findings of fact, the court makes the following conclusions of law:

14. This court has jurisdiction over the parties, and has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. In an action for injunctive relief, the amount in controversy is measured by the value of the interest sought to be protected by the equitable relief requested. *See, e.g., Texas Eastern Transmission Corp. v. Giannaris*, 818 F.Supp. 755, 758–59 (M.D.Pa.1993). In the present case, the court is satisfied that the interest which Columbia is seeking to protect exceeds the amount in controversy requirement for diversity jurisdiction.[13]

15. In considering a motion for preliminary injunctive relief, a court must carefully weigh four elements: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of such relief; (3) whether granting the preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest. *See, e.g., ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir.1985). After consideration, the court

---

**11.** According to the testimony of Dana M. Debaets, Columbia's Area Superintendent, which the court finds to be credible, the industry standard for gas pipelines is 3 feet of cover and a right-of-way of 50 feet in width. A depth of cover of 11 feet effectively denies Columbia access to its right-of-way. To repair the pipeline, this depth would leave inadequate space on the right-of-way to bring in the necessary equipment, to temporarily place the spoil which is removed from the ditch and to allow for proper sloping. (Exhibit 39).

**12.** In addition to the difficulty of locating pipelines as a result of excess cover, the amount of time to find and repair a leak, the cost of repair and the inconvenience to Columbia's customers increases substantially with the amount of excess cover.

**13.** The court may also have federal question jurisdiction under 28 U.S.C. § 1331. *See, e.g., Columbia Gas Transmission Corp. v. Burke*, 768 F.Supp. 1167, 1170 (N.D.W.Va.1990).

concludes that Columbia has established all four elements.

16. With respect to the reasonable probability of success on the merits, there is no dispute that Columbia owns a right-of-way over Tarbuck's property to inspect, maintain and repair Line 1570; that, prior to purchasing the property, Tarbuck met with Jane Zaremba, Columbia's Transmission Agent, who located the pipeline for him and explained Columbia's construction guidelines relating to development in the vicinity of the pipeline;[14] and that Tarbuck signed the Location of Gas Lines form prepared by Ms. Zaremba, acknowledging that the construction guidelines applied to Columbia's right-of-way over Line 1570. As noted by Columbia, the owner of a servient estate may use the land for any purpose so long as the use is reasonable and does not interfere substantially with an easement. *Rodier v. Township of Ridley,* 141 Pa.Cmwlth. 117, 595 A.2d 220 (1991), citing *Assocs. of Philipsburg v. Hurwitz,* 292 Pa.Super. 406, 437 A.2d 447 (1981). (Columbia's Memorandum of Law, p. 15). At the hearing, Columbia offered ample evidence that, in direct contravention of its construction guidelines, Tarbuck deposited excess cover over Line 1570, which substantially interferes with Columbia's use of its right-of-way. Therefore, the court finds that Columbia has established the first element for preliminary injunctive relief.

17. Turning to the requirement of irreparable injury, the evidence offered by Columbia established that the excess cover over Line 1570 affects the ability of Columbia to comply with Federal regulations, which could subject Columbia to civil and criminal penalties. Specifically, the excess cover hampers Columbia's ability to locate the pipeline to carry out the inspections and tests mandated by Federal regulations. It also affects the ability of Columbia to obtain accurate test results. The potential harm posed by a gas leak to Columbia's customers who are serviced by Line 1570 (including Tarbuck), to the surrounding community (includ-ing travelers on Route 19), to the environment and to Columbia cannot be seriously disputed. Under the circumstances, the court concludes that Columbia has met its burden of establishing irreparable injury.

18. With regard to the third element, it is clear that a preliminary injunction will not result in even greater harm to Tarbuck. Prior to purchasing the property that is subject to Columbia's right-of-way, Tarbuck was aware of the restrictions on excess cover, and he agreed to abide by Columbia's construction guidelines during the development of the property. Despite repeated warnings by Columbia concerning the activity he was conducting on its right-of-way, he failed to comply with the construction guidelines. The cost to Tarbuck to remove the excess cover is minimal in comparison to the cost that would be incurred by Columbia to raise the pipeline or to remove the pipeline from Tarbuck's property. Accordingly, the court concludes that Columbia has established the third element for a preliminary injunction.

19. Finally, with regard to the final element, Columbia has established that the public interest will clearly be served by a preliminary injunction. The inability of Columbia to accurately locate, inspect and test Line 1570 due to excess cover poses a serious risk of harm to the public, including the loss of life, property damage and interruption of gas service. Under the circumstances, the court concludes that the motion of Columbia for a preliminary injunction will be granted.

20. One final issue needs to be addressed. Tarbuck has challenged Columbia's claim that its right-of-way is 50 feet wide. As noted in the Findings of Fact, the right-of-way granted to Columbia over the back of Tarbuck's property is specifically described as a 50–foot right-of-way. However, the right-of-way granted over the front of Tarbuck's property is silent with respect to its width. After hearing the testimony offered by Columbia, and considering the case law

---

14. This meeting occurred in February of 1991 before ownership of the property was transferred to Tarbuck in April of 1991.

cited by Columbia,[15] the court concludes that the entire right-of-way granted to Columbia is 50 feet wide. To find otherwise would effectively preclude Columbia from using the right-of-way for its intended purpose of maintaining and repairing Line 1570.

An order follows.

### ORDER

AND NOW, this 1st day of February, 1994, in accordance with the foregoing opinion, it is hereby ORDERED as follows:

1. Defendant, Michael D. Tarbuck, his employees, agents and all persons acting in concert with him or on his behalf, either directly or indirectly, are preliminarily enjoined and prohibited from dumping, grading or otherwise placing earth, fill or other encroaching material upon or within the right-of-way, 50 feet in width, of plaintiff, Columbia Gas Transmission Corporation (Columbia) for a 20–inch high pressure, natural gas transmission pipeline known as "Line 1570," across the two adjacent parcels of property in South Strabane Township, Washington County, Pennsylvania, conveyed to defendant by the children of Leslie and Carmel Valitutti by a deed dated April 25, 1991 (the right-of-way). Neither defendant nor any person acting in concert with him, or in his behalf, shall conduct construction, grading or any other activity on the right-of-way without the prior consent of Columbia.

2. On or before February 11, 1994, defendant shall commence work to remove excess cover consisting of dirt, rock, fill and other material, from the right-of-way, so that there will remain above the level of the existing "Line 1570" and across the entire width of the right-of-way approximately three (3) feet of soil cover. Defendant shall stabilize any area excavated by him during the removal of such excess cover, and he shall perform the work of removing excess cover from the right-of-way, and of stabilizing the same, under the supervision of designated agents, servants and employees of Columbia. All such work performed by defendant shall be performed during normal business hours, Mon-

days through Fridays, and shall be completed on or before February 25, 1994.

3. Columbia shall give security in the sum of $5,000.00 for the payment of such costs and damages as may be incurred or suffered by defendant or any party who may be found to have been wrongfully enjoined or restrained or otherwise wrongfully harmed by the enforcement of this order. Such bond shall be posted with the Clerk of this court as provided by Fed.R.Civ.P. 65.1.

4. The court retains jurisdiction to compel compliance with the terms of this order.

5. This order shall remain in effect until further order of this court.

---

**15.** Columbia's Memorandum of Law on Jurisdiction and the Width of Columbia's Right of Way,    pp. 11–15.