Aaron **ABRAMSON**, et al.

v.

**FLORIDA GAS TRANSMISSION COMPANY**, et al.

Civ. A. Nos. 91–4255, 93–2404.

United States District Court, E.D. Louisiana.

Nov. 20, 1995.

**3.** *See* Memorandum and Order at pp. 404–407.

Karen Delcambre McCarthy, Lanny R. Zatzkis, Yvette Anne D'Aunoy, Zatzkis & Associates, New Orleans, LA, Louis B. Merhige, Louis B. Merhige, Metairie, LA, for Aaron Abramson.

Louis B. Merhige, Metairie, LA, for Alfred Abramson, Joseph Abramson, Carol Abramson Schudmak, Eugenie Marrus Abramson, Steven M. Brainis, Joseph M. Brainis, David Brainis, Lucy Abramson Brainis, Debra Brainis Lester, Sara Brainis Rambin and Ethel Abramson.

Michael Ray Mangham, Michael J. O'Shee, Mangham & Hardy, Lafayette, LA, Louis P. Soldano, Florida Gas Transmission Co., Houston, TX, for Florida Gas Transmission Co.

Bryan David Fisher, Hank Seldon Hannah, Hannah, Colvin & Pipes, Baton Rouge, LA, for Ralston & Associates, Inc.

Stephen Louis Huber, Borrello, Huber & Dubuclet, Metairie, LA, Lawrence Emig Larmann, W. Evan Plauché, Hailey, McNamara, Hall Larmann & Papale, Metairie, LA, for Henkels & McCoy Inc.

Lawrence Emig Larmann, Dominic J. Ovella, W. Evan Plauché, Hailey, McNamara, Hall Larmann & Papale, Metairie, LA, Russell Louis Sylvester, Brittain & Sylvester, Natchitoches, LA, for Liberty Mut. Ins. Co.

Eric Shuman, McGlinchey, Stafford & Lang, New Orleans, LA, Richard W. Bryan, Douglas C. McAllister, Jackson & Campbell, Washington, DC, for National Union Fire Ins. Co. of Pittsburgh.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a "Motion to Dismiss Claims for Remediation Damages" filed by defendant Henkels & McCoy, Inc. The motion was taken under submission on a previous date without oral argument. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion in part and DENIES the motion in part.

### Background

Plaintiffs have asserted claims against defendants Florida Gas Transmission Company (hereinafter "Florida Gas") and Henkels & McCoy, Inc., for damages to their property following a reconditioning project on a natural gas pipeline that traverses plaintiffs' property. Plaintiffs seek damages for various items, including but not limited to damages for material allegedly left on the property. Florida Gas owns the pipeline, and Henkels & McCoy was the reconditioning contractor.[1]

---

1. These background facts are taken from plaintiffs' amended complaints in these consolidated matters. (R.Docs. 101 and 102.)

Plaintiffs allege breach of contract against Florida Gas arising out of an alleged breach of the "Temporary Work Space Agreement" granted Florida Gas for the pipeline reconditioning project.[2] Plaintiffs also allege negligence of both Florida Gas and Henkels & McCoy and a violation of Louisiana Civil Code Article 745.[3] Plaintiffs further contend that Henkels & McCoy breached its contract with Florida Gas through its actions and that plaintiffs are third-party beneficiaries to this contract, entitling them to specific performance and damages.[4]

In this motion Henkels & McCoy seeks to dismiss plaintiffs' claims for remediation for several reasons. First, Henkels & McCoy maintains that remediation damages are neither necessary nor appropriate. Second, Henkels & McCoy contends that federal law preempts remediation damages because of the nature of the pipeline. In a related argument, Henkels & McCoy submits that, even if remediation damages are appropriate, only Florida Gas can perform the remediation under federal law such that an award of damages for anyone else to perform the remediation is inappropriate. In a further related contention, Henkels & McCoy posits that because only Florida Gas can perform the remediation, plaintiffs' claims are extinguished under the Louisiana doctrine of confusion.[5]

Also relying on Louisiana law, Henkels & McCoy theorizes that injunctive relief is the only available remedy to plaintiffs, not damages, and/or that remediation damages are not the appropriate measure of damages. Finally, Henkels & McCoy asserts that under Louisiana law governing servitudes, plaintiffs are not entitled to recover damages for material allegedly left on plaintiffs' property.

Plaintiffs dispute each and every point raised by Henkels & McCoy and also maintain that, to the extent that Henkels & McCoy seeks dismissal of plaintiffs' claims based in tort, plaintiffs still maintain a cause of action against defendants for breach of contract.

## Law and Application

### I.   Standard of Review

Although Henkels & McCoy styles this motion as a motion to dismiss, as to certain issues Henkels & McCoy relies on matters outside of the pleadings. Hence, as to those issues on which defendant does not refer to matters outside the pleadings, the Court will apply the standard for motions to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). As to those issues where matters are presented outside the pleadings, the Court will consider the motion as a motion for summary judgment and apply the standard of review set forth in Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b).

### A.   Motion to Dismiss

■■■■  As to those issues on which Henkels & McCoy seeks dismissal for failure to state a claim, the moving party has the burden of showing that plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief. *Baton Rouge Building and Construction Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir. 1986), *citing Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case, even if it "appear[s] on the face of the pleadings that a recovery is very remote and unlikely." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■■■■  The court must accept all well-pleaded factual allegations in the complaint as true and view the allegations in the light most favorable to the non-moving party. *American Waste & Pollution Control Com-*

---

2.  *Id.*

3.  *Id.*

4.  *Id.* Plaintiffs' amended complaints also sought exemplary damages for an alleged violation of LSA–C.C. Art. 2315.3, but plaintiffs filed a "Joint

Stipulation of Waiver of Punitive Damages Claim" earlier this year. (R.Doc. 178.)

5.  Louisiana law is applicable in this case brought pursuant to diversity jurisdiction. 28 U.S.C. § 1332.

*pany, Inc. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). Motions to dismiss for failure to state a claim are viewed with disfavor and rarely granted. *Tanglewood East Homeowners v. Charles–Thomas, Inc.,* 849 F.2d 1568, 1572 (5th Cir.1988).

### B. Motion for Summary Judgment

■ As to those issues on which summary judgment is sought, Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment *as a matter of law.*" (Emphasis added.) The non-movant's burden of showing a genuine issue of material fact "is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Further, "factual controversies [are resolved] in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.*

■ In other words, the inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The substantive law determines materiality of facts, and only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In essence, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

### II. Necessity of Remediation

■ Henkels & McCoy proposes that remediation is unnecessary because plaintiffs are only seeking to remediate undeveloped ranch land under which the pipeline passes and because the debris on the property consists "almost exclusively" of polyethylene plastic, which was the old pipeline coating. (Henkels & McCoy's memorandum in support, p. 4.) Because this plastic had been in the ground before as coating on the pipeline, Henkels & McCoy maintains that remediation is unnecessary. Further, any new cold-tar coating that exists in the pipeline "right-of-way" does not harm the property. Defendant's contentions on this issue are wholly unsubstantiated, either legally or factually through depositions, affidavits or similar discovery devices.

Because of this lack of support, Henkels & McCoy's argument fails because, treating it as a motion to dismiss, plaintiffs' allegations in their amended complaints have to be taken as true. *American Waste, supra.* Thus, plaintiffs can prove a set of facts consistent with their claims. *Jacobs Constructors, supra.* Even construing this as a motion for summary judgment, Henkels & McCoy fails to meet the rudimentary requirement under Rule 56 of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Defendant argues without any support that the polyethylene plastic and coal tar are not harmful and that, as to the plastic, it was on the pipeline for years and therefore not harmful. However, it is readily apparent that the fact that the plastic was attached to the pipeline for years is completely different from plaintiffs' allegations that the plastic remains strewn and/or buried on plaintiffs' property and, if so, whether that has damaged plaintiffs' property.

The Court declines defendant's motion as to this issue not only because it conveys nothing of legal import but also because it is

a pedestrian notion bordering on being frivolous.

## III. Remediation Preempted

■ Henkels & McCoy next proclaims that federal law preempts remediation damages because federal law governs the rights of plaintiffs as property owners on whose property runs a natural gas pipeline pursuant to a right-of-way agreement. Because Henkels & McCoy relies on affidavits from a Florida Gas vice president as to Florida Gas' status under federal law,[6] the Court treats this motion as one for summary judgment.

■ There is no doubt, as Henkels & McCoy argues, that Congress has the power to preempt state law. *See Northwest Central Pipeline Corp. v. State Corp. Commission of Kansas,* 489 U.S. 493, 509, 109 S.Ct. 1262, 1273, 103 L.Ed.2d 509 (1989). However, beyond this statement of "black-letter law," Henkels & McCoy offers no legal support for its argument that any federal statute is implicated which preempts plaintiffs' claims. Further, a review of the only two possible statutes that could preempt these claims in light of the appropriate principles of law shows that Henkels & McCoy's contention falls of its own weight.

■ According to the Supreme Court, determination of whether Congress has preempted state law requires an examination of congressional intent. *Id.,* 489 U.S. at 509, 109 S.Ct. at 1273.

> In the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, or where the state law at issue conflicts with federal

law, either because it is impossible to comply with both, or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives.

*Id.,* 489 U.S. at 509–10, 109 S.Ct. at 1273–74 (citations omitted). Conflict preemption is applied sensitively. *Id.* at 515, 109 S.Ct. at 1277.

While the Natural Gas Act, 15 U.S.C. § 717 *et seq.,* regulates "natural-gas compan[ies]," such as Florida Gas, 15 U.S.C. § 717a(6), its purpose is to regulate natural gas transported and sold in interstate commerce. 15 U.S.C. § 717(a) and (b). The Court's review of the Natural Gas Act reveals nothing which specifically states that actions such as plaintiffs' for damages to property through which pipelines run are preempted.

Further, the Court's analysis of the Natural Gas Act reveals that Congress has not attempted to legislate so comprehensively as to occupy the field of regulation of cases involving property damages, such as that alleged by plaintiffs. Nor does Louisiana contract, tort, or property law at issue in this case conflict with federal regulation of transportation and sale of natural gas. These areas of state law do not stand as an obstacle to congressional objectives in the federal government's regulation of sale and transportation of natural gas.[7]

The only possible conflict between the Natural Gas Act and Louisiana law which provides for remediation damages sought by plaintiffs arises under 15 U.S.C. § 717f(b), which provides, in pertinent part, that no natural-gas company may abandon services rendered by its facilities without prior permission and approval of the Federal Power

---

6. Exh. REM–1, attached to defendant's memorandum in support. (R.Doc. 204.)

7. In *Northwest Central Pipeline,* the Supreme Court stated that "[w]here state law impacts on matters within [Federal Energy Regulatory Commission's] control, the State's purpose must be to regulate production or other subjects of state jurisdiction, and the means chosen must at least plausibly be related to matters of legitimate state concern." *Northwest Central Pipeline,* 489 U.S. at 518, 109 S.Ct. at 1278. Here, it is not clear that state law impacts on matters within FERC's

control. Even so, however, it is also clear that the state's areas of law relating to damages to property owners on whose property pipelines run are a legitimate state concern.

The Court also notes that in *Northwest Central Pipeline,* even though the issue of production regulation of natural gas was much more closely related to the Natural Gas Act than the issues in the present case, the Supreme Court refused to find that the Natural Gas Act preempted state law. *Id.* at 519–22, 109 S.Ct. at 1279–80.

Commission. However, Henkels & McCoy confuses the award of remediation damages with remediation itself. Further, although Henkels & McCoy argues that it could not shut down the pipeline, pursuant to 15 U.S.C. § 717f(b) there is a procedure for seeking approval of this shutdown and, if granted by the Federal Energy Regulatory Commission, it may be done. It is premature to determine that such a shutdown could not occur. In any case, there is no federal preemption by the Natural Gas Act.

Neither is there preemption under the Natural Gas Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.* There exists no explicit preemption language in this act or any evidence of inferences of preemption. Indeed, two separate sections of the Natural Gas Pipeline Safety Act provide, respectively, that the act does not "affect the tort liability of any person," 49 U.S.C. § 60120(c), and a private right of action under the act "does not restrict a right or relief that a person or a class of persons may have under another law or common law." 49 U.S.C. § 60121(d).

Thus, the Court rejects Henkels and McCoy's argument that plaintiffs' claim is preempted by federal law. On the contrary, accepting the well-pleaded facts in plaintiffs' amended complaint as true, plaintiffs have stated a claim which entitles them to relief.

### IV. Only Florida Gas Can Perform Remediation

■ Henkels & McCoy moves for summary judgment on the basis that, because Florida Gas is a "natural-gas company" under the Natural Gas Act and because Florida Gas would have to shut down the pipeline for remediation and/or perform the remediation under Federal regulations, plaintiffs are not entitled to remediation damages. However, again Henkels & McCoy confuses damages for remediation with the performance of the remediation itself.

Henkels & McCoy cites several cases in support of its argument that a landowner is not permitted to interfere with a right-of-way that affects the ability of the natural-gas company from complying with federal regulations.[8] All of these cases are factually inapposite, however, because they dealt with factual situations where the landowner was interfering with the natural-gas company's right-of-way. Here the landowners are claiming damages to their land from a pipeline reconditioning project. Thus, Henkels & McCoy is not entitled to summary judgment as a matter of law on this issue.[9]

### V. Louisiana Law Bars Remediation Claim

Henkels & McCoy makes four arguments in support of its position that Louisiana law bars plaintiffs' remediation claim. Henkels & McCoy contends first that under Louisiana law injunctive relief is plaintiffs' only measure of damages. Henkels & McCoy then argues that plaintiffs' remediation claim is barred by the Civil Code doctrine of confusion. Henkels & McCoy's third argument is that, as to plaintiffs' claim for damages under tort, remediation is improper. Henkels & McCoy's final argument is that under Louisiana property law plaintiffs are not entitled to remediation damages. The Court addresses these contentions in turn.

#### A. Plaintiffs Only Entitled to Injunctive Relief

■ In support of their supposition that plaintiffs are only entitled to injunctive relief and not remediation damages under Louisiana law, which appears to be a motion to dismiss, Henkels & McCoy cites cases "between neighboring property owners in a situation in which a neighbor asserts that some act on his own neighbor's property has caused or is causing damages." (Henkels & McCoy's memorandum in support, p. 12, R.Doc. 204.) Henkels & McCoy argues that these cases are analogous to the present situation.

---

8. *See Columbia Gas Transmission Corp. v. Tarbuck,* 845 F.Supp. 303 (W.D.Pa.1994); *Swango Homes, Inc. v. Columbia Gas Transmission Corp.,* 806 F.Supp. 180 (S.D.Ohio 1992); *Columbia Gas Transmission Corp. v. Burke,* 768 F.Supp. 1167 (N.D.W.Va.1990).

9. In view of the Court's findings as to preemption and preemption-related issues, the Court deems it unnecessary to reach the issue separately briefed by the parties of whether preemption is an affirmative defense waived by defendants.

The first case—*Rodrigue v. Copeland*, 475 So.2d 1071 (La.1985)—is distinguishable because the plaintiffs there only sought injunctive relief. *Id.* at 1072. At no time in that opinion did the Louisiana Supreme Court state that plaintiffs were only entitled to injunctive relief.

Similarly, *Poole v. Guste*, 261 La. 1110, 262 So.2d 339 (1972), is inapposite. Although the Louisiana Supreme Court's opinion concentrates on the issue of injunctive relief, the Supreme Court also affirmed the award of monetary damages to plaintiffs for timber loss. *Id.* 261 La. at 1129, 262 So.2d 339. Quite obviously, *Poole* does not stand for the proposition only injunctive relief is proper when a property owner damages his or her neighbor's property. *See also Inabnet v. Exxon Corp.*, 642 So.2d 1243, 1252, 1256 (La. 1994) (holding that "in cases involving damages caused to one holder of a right to immovable property by another holder of a right to the same property," in determination of fault under LSA–C.C. Art. 2315, courts must consider codal articles 667–669 and all other applicable codal and statutory rules and legal principles; affirming damages to oyster-lease holder); *Dowden v. Security Ins. Corp.*, 471 So.2d 1165 (La.App. 3rd Cir. 1985) (affirming award of damages to timber caused by neighboring property owner's actions under LSA–C.C. Art. 667).

Thus, construing the factual allegations of plaintiffs' amended complaints as true, the Court finds that the motion to dismiss by Henkels & McCoy as to this issue should be denied because plaintiffs can prove a set of facts consistent with their allegations which would entitle them to relief under Louisiana law.

### B. Plaintiffs' Claims Extinguished by Confusion

■ Henkels & McCoy posits that plaintiffs' claim for remediation damages are barred by the Civil Code doctrine of confusion because only Florida Gas can perform the remediation. Because this issue involves matters outside of the pleadings, *i.e.*, the fact that Florida Gas is a natural-gas company, as attested to by an affidavit from one of its vice presidents,[10] the Court treats this as a motion for summary judgment.

■ However, the Court finds that Henkels & McCoy misconstrues the doctrine of confusion, which provides that "an obligation ceases to exist when the qualities of debtor and creditor of the same obligation are joined in the same person. . . ." *Bogalusa Community Medical Center v. Batiste*, 603 So.2d 183, 187 (La.App. 1st Cir.1992), *quoting* Comment, *Extinguishment of Obligations by Confusion*, 36 Tul.L.R. 521–23 (1962). In order for this doctrine to apply, "the same person must acquire the full and perfect ownership of both sides of the obligation by a conveyance which is translative of title." *Id.*

In this case, Henkels & McCoy has failed to show factually that there is "full and perfect ownership of both sides of the obligation" at issue by Florida Gas. Plaintiffs have demanded that defendants remediate their land, and there has been no showing that Florida Gas is both debtor and creditor of this obligation. As a result, Henkels & McCoy is not entitled summary judgment on this issue because it has failed to bear its "initial responsibility of informing the district court" of the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, and because it has failed to show its entitlement to summary judgment as a matter of law. Fed.R.Civ.P. 56(c).

### C. Remediation Damages Not the Appropriate Measure of Damages

■ Henkels & McCoy's next argument is that remediation is not the appropriate measure of damages under *Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Service Company*, 618 So.2d 874 (La.1993). There the Louisiana Supreme Court stated:

[A]s a general rule of thumb, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference

10. *See* Exh. REM–1, attached to defendant's memorandum in support.

between the value of the property before and after the harm. If, however, the cost of restoring the property in its original condition is disproportionate to the value of the property or economically wasteful, unless there is a reason personal to the owner for restoring the original condition or there is a reason to believe that the plaintiff will, in fact, make the repairs, damages are measured only by the difference between the value of the property before and after the harm. Consequently, if a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building.

*Id.* at 879.

In support of its argument, Henkels & McCoy relies on two affidavits. Thus, the Court treats this motion as one for summary judgment. The first affidavit is that of Albert Pappalardo, defendants' expert real estate appraiser, which states that, according to documents he has reviewed, the property belonging to the Abramson plaintiffs has been appraised at $240,000 for approximately 200 acres.[11] Pappalardo further muses that the property belonging to the Harrison plaintiffs has been appraised at $706,500 for approximately 491 acres.[12] Additionally, according to Pappalardo's affidavit, the area in the pipeline right-of-way traversing the Abramson property is approximately 7 acres, or 3.5% of the entire area of the property, while the area in the right-of-way crossing the Harrison property is 7.75 acres, or approximately 1.6 percent of the entire area of the property.[13] Finally, Pappalardo opines that "it is my impression that the values of the property subject to the rights-of-way when compared to the entire property is not greater than 10 percent of the value of each entire tract and, as such, it is further my opinion that the value of the property subject to the right-of-way is minimal in comparison

to the damages plaintiffs seek for remediation damages." [14]

Henkels & McCoy also relies on the affidavit of Florida Gas vice president of operations for the propositions that in order for remediation around the pipeline to be performed, the pipeline would have to be removed from service for approximately two months.[15] However, according to this same affidavit, the pipeline is operating at 100% capacity and, if it were required to be taken out of service, "it is likely that a substantial number of customers requiring natural gas would lose or suffer reduced natural gas service until such time as this 24 inch [sic] pipeline would be placed back in service." [16] Further, "Florida Gas Transmission Company's pipeline system is operating at nearly 100 percent of its rated capacity and there is little or no capacity for rerouting natural gas through other pipelines." [17]

In opposition, plaintiffs temporize that their claim for damages is based not only in tort but also in contract such that, even if Henkels and McCoy's argument is well-based, plaintiffs still will maintain a claim for remediation damages. Plaintiffs also rely on a pre-*Roman Catholic Church*, Louisiana appellate court case for the proposition that remediation damages are proper. Plaintiffs further argue that certain language that comprises the reasoning in *Roman Catholic Church* as well as its holding supports their argument that remediation damages are proper in this case. Plaintiffs further contend, without any supporting affidavits or otherwise, that the Harrison property has been in the same family for generations, is the homestead for several members of the Harrison family and, hence, has a personal purpose and meaning for its owners. Plaintiffs do not offer any such argument as to the Abramson property.

**11.** Exh. REM–2, attached to defendant's memorandum in support.

**12.** *Id.*

**13.** *Id.*

**14.** *Id.*

**15.** Exh. REM–1, attached to defendant's memorandum in support. (R.Doc. 204.)

**16.** *Id.*

**17.** *Id.*

■ The Court finds that, based on the uncontroverted affidavits produced by defendant,[18] the appropriate remedy for damages for plaintiffs' tort claim in this matter is the difference between the value of the property before and after the alleged harm of deposit of debris from the pipeline reconditioning project on plaintiffs' property. According to Henkels & McCoy's memorandum in support, which is uncontroverted by plaintiffs, plaintiffs' estimate of remediation damages is $2.7 million.[19] When this figure is compared with the information in Pappalardo's uncontroverted affidavit, it is clear that "the cost of restoring the property in its original condition is disproportionate to the value of the property." *Roman Catholic Church*, 618 So.2d at 879. Pappalardo calculates the value of the properties belonging to plaintiffs and subject to the right-of-way is no more than 10% of the properties themselves, or approximately $24,000 for the Abramson property and approximately $70,650 for the Harrison property. The disproportionate cost of restoring the property is readily apparent.

Additionally, in view of the unrebutted affidavit from Florida Gas' vice president, the Court finds that it would be economically wasteful to force remediation for any tort liability defendant may have.

Nor have plaintiffs shown through affidavits or otherwise that "there is a reason personal to the owner for restoring the original condition." *Id.* Plaintiffs' allegations as to the Harrison property bespoke merely of terse observations that were unsubstantiated

by any affidavit, deposition testimony or otherwise. Additionally, as noted, plaintiffs failed to make any contention that there is any personal reason for the Abramson owners to restore the property to its original condition. As a result, plaintiffs have failed to carry their burden of showing a genuine issue of material fact exists on this issue. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. There is no need for resolution of factual issues at trial. *Id.*[20]

Therefore, the Court grants summary judgment in favor of Henkels & McCoy as to this issue. There is no genuine issue of material fact that, as to plaintiffs' tort claim under Louisiana Civil Code Article 2315, their damages are limited to the difference between the value of their properties before and after the alleged harm in this matter by defendant.[21]

### D. Remediation Damages Barred by Louisiana Property Law

■ Henkels & McCoy's final contention, which the Court construes as a motion to dismiss because it does not raise matters outside of the pleadings, is that under Louisiana law on servitude, plaintiffs are not entitled to recover damages for the presence of non-hazardous materials in the pipeline trench on Florida Gas' right-of-way.[22]

The Court need not spend much time on this, perhaps valedictorian, issue raised by defendant because, although Henkels & McCoy cites LSA–C.C. Art. 745 in support of its position, it fails to quote the entire article, which states:

---

18. The Court also finds that Pappalardo's affidavit meets the standard required for admissibility of expert testimony at trial under Fed.R.Evid. 702 and 703, *see Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, ————, 113 S.Ct. 2786, 2795–96, 125 L.Ed.2d 469 (1993), and notes that plaintiffs do not contest the use of Pappalardo's affidavit on summary judgment. Further, it is clear that a properly supported expert affidavit may be used at the summary judgment stage in support of a party's motion. *See, e.g., Rodriguez v. Pacificare of Texas, Inc.*, 980 F.2d 1014, 1019 (5th Cir.1993).

19. Defendant's memorandum in support, p. 18.

20. The Court also finds that plaintiffs' citation of *Barr v. Smith*, 598 So.2d 438 (La.App. 2nd Cir.

1992) is inconsequential in view of the Louisiana Supreme Court's pronouncement in *Roman Catholic Church*.

21. As plaintiffs correctly point out, however, their claims for breach of contract and under LSA–C.C. 745 are not limited by this decision.

22. Plaintiffs argue that the right-of-way at issue is a personal servitude of right of use, not a predial servitude under Louisiana law, but plaintiffs also correctly note that this is a distinction without a difference because "[a] right of use is regulated by the application of the rules governing usufruct and predial servitude to the extent that their application is compatible with the rules governing a right of use servitude." LSA–C.C. Art. 645.

The owner of the dominant estate [Florida Gas] has the right to enter with his workmen and equipment into the part of the servient estate that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, *under the obligation of causing the least possible damage and of removing them as soon as possible.* (Emphasis added.)

Additionally, a case cited by defendant— *Board of Commissioners of the Port of New Orleans v. Illinois Central Gulf Railroad Company,* 379 So.2d 838 (La.App. 4th Cir. 1980)—actually favors plaintiffs' position. There the court of appeal held that the railroad "violated its duty to cause the least possible damage to the servient estate" when it damaged a sewer pipe owned by plaintiff even though the existence of the sewer line made use of the railroad's servitude inconvenient and interfered with the railroad's maintenance responsibility of the line. *Id.*

Construing the allegations of plaintiffs' amended complaints as true, as the Court must on a motion to dismiss, the Court finds that plaintiffs can prove a set of facts under Louisiana law consistent with their allegations as to whether they are entitled to relief under LSA–C.C. Art. 745. *Jacobs Constructors, supra.*

Neither is *Klumpp v. Colonial Pipeline Company,* 389 So.2d 457 (La.App. 3rd Cir. 1980) helpful to Henkels & McCoy. First, a review of that decision reveals that the court's ruling was based on the contract between the parties, not necessarily Louisiana property law. *Id.* at 470–71. Second, the court of appeal upheld an award of damages as a result of foreign substances being left on plaintiffs' property when a new pipeline was laid on a right-of-way. *Id.* Finally, it is clear that the court of appeal's statement that it would not require the pipeline company to return the land with the subsurface in the exact same condition as prior to disturbance was based on construction of the contract between the parties and did not involve any issue under Louisiana property law. *Id.*

Therefore, Henkels & McCoy is not entitled to dismissal of plaintiff's claims for remediation damages based on Louisiana property law.

VI. Conclusion

The Court has examined carefully Henkels & McCoy's motion to dismiss plaintiffs' claims for remediation damages and/or for summary judgment as to these damages. The Court holds that, as to plaintiffs' claims for remediation damages under Louisiana Civil Code Article 2315, Henkels & McCoy is entitled to summary judgment. As to all other contentions, however, the Court rules that Henkels and McCoy's motion must be denied.

Accordingly,

IT IS ORDERED that the "Motion to Dismiss Claims for Remediation Damages," filed by Henkels & McCoy, Inc., is GRANTED in part and DENIED in part.