603 So.2d 183 (1992)
BOGALUSA COMMUNITY MEDICAL CENTER
v.
Ethel BATISTE.
No. 90 CA 2135.
Court of Appeal of Louisiana, First Circuit.
March 24, 1992.
Dissenting Opinion March 31, 1992.
Rehearing Denied May 28, 1992.
*184 Dale Branch, Bogalusa, for plaintiff-appellee.
Lon Roberson, Baton Rouge, for defendant-appellant.
Before COVINGTON, C.J., and SAVOIE and LeBLANC, JJ.
LeBLANC, Judge.
Plaintiff, Bogalusa Community Medical Center (BCMC), filed this suit on open account to recover medical expenses in the amount of $10,844.81 for care provided by BCMC to defendant's husband prior to his death. On April 18, 1988, Mr. Stanley Batiste, Sr., was employed by BCMC in the capacity of a janitor. While working on BCMC's premises on that date, Mr. Batiste became ill. He subsequently died on April 21, 1988. Mr. Batiste's widow, Ethel Batiste, later filed suit against BCMC and its insurer, Aetna Casualty and Surety Company (Aetna), seeking to recover worker's compensation benefits. In that suit, Mrs. Batiste alleged that Mr. Batiste, Sr., had suffered a stroke while working within the course and scope of his employment for BCMC.
During April of 1989, Mrs. Batiste executed a release pursuant to which she acknowledged the receipt of $35,000.00 from Aetna. The release provided that in consideration of the $35,000.00 payment, Mrs. Batiste released BCMC and Aetna from "all past, present and/or future claims, demands, losses, damages, causes of action, and rights of action ... to which [Ms. Batiste] may be entitled, in any way resulting from and/or to result from the accidental death of Stanley Batiste, Sr. which occurred on or about April 18, 1988, including, without limitations whatsoever, ... claims ... for past, present, and/or future bodily and personal injuries, physical and mental pain and suffering, disabilities, disfigurements, loss of wages, medical expenses, other expenses, costs, property damage, any consequences of the foregoing, and any and all damages of whatsoever kind or character which may have been sustained and/or might in the future be sustained by appearer and Stanley Batiste, Sr. in any way resulting from the aforesaid accident." The release further stated that "this settlement is a compromise of doubtful and disputed claims and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that the said releases [sic] deny liability therefore and intend merely to avoid litigation and buy their peace."[1]
When the present suit was filed by BCMC against Ms. Batiste, she answered the suit, denying liability, and stated that "[t]he debt sued on is one arising out of a job related occurrence and the financial responsibility for the same is that of the employer, who is also plaintiff herein." After trial in this matter, the judge issued written reasons for judgment in which he found that Ms. Batiste had filed a worker's compensation suit against BCMC's insurer and that this claim was settled for $35,000.00. The court noted that Ms. Batiste contended that she was unaware of any unpaid medical bills, and therefore, the settlement was not intended to cover payment of these bills. However, this contention was rejected. The judge stated that he had carefully reviewed the worker's compensation compromise proceedings and found that a claim was made for a substantial sum of money for medical benefits, burial expenses, and other worker's compensation benefits. He further stated that Ms. Batiste was represented by counsel, and was aware of the existence of a substantial medical bill with BCMC. The judge also found that correspondence signed by Ms. Batiste's attorney established that Ms. Batiste and her attorney knew of the medical bill in question. The judge said, "To that extent, the Court does not find the attorney's testimony to the contrary credible." The judge determined that under these circumstances and based on the financial responsibility *185 form signed by Ms. Batiste during Mr. Batiste's hospitalization, that she was obligated to reimburse BCMC. The judge also found that BCMC was entitled to recover attorneys' fees due to a timely demand.
Accordingly, the trial court rendered judgment in the amount of $10,844.81, plus legal interest from the date of judicial demand, attorneys' fees and court costs. From this judgment, Mrs. Batiste appeals, raising the following assignments of error:
1. The trial judge erred in finding that a valid contractual obligation was created between the plaintiff and the defendant, making the defendant liable for medical expenses on an open account.
2. The trial judge erred in failing to find that the obligation to pay work-related medical expenses is the employer's obligation.
3. The trial judge erred in failing to find that the obligation to pay medical expenses to the plaintiff was extinguished by confusion because the plaintiff was both the obligor and the obligee.
4. The trial judge erred in failing to find that the plaintiff's action was "res judicata" due to a previous compromise.[2]
At trial, one of BCMC's accounts receivable clerks was called as a witness. The clerk testified that the hospital bill for the treatment received by Mr. Batiste amounted to $10,844.81 and that the bill had not been paid as of the date of trial. The clerk also identified a form entitled "CONDITIONS OF ADMISSION TO BOGALUSA COMMUNITY MEDICAL CENTER", which contained a financial responsibility section, and was signed by Mrs. Batiste as a guarantor.
Mrs. Batiste testified that although she signed this form, she did not understand what it meant. She said it was not explained to her that she would be responsible for her husband's medical bill. She further testified that when she signed the document she was unaware that BCMC might be responsible to pay her husband's bill. She stated that she never agreed to pay this medical bill after she settled the worker's compensation case. She explained that when she settled the worker's compensation case, she understood that no other debts were owed as a result of her husband's illness.
Additionally, Ms. Batiste explained that she did not pay the medical expenses incurred by her husband at BCMC because she had been advised by a woman who worked in the hospital's insurance office that the bill was paid in full. Mrs. Batiste testified that she was later notified, after filing suit to recover worker's compensation benefits, that she would have to pay the full amount of the hospital bill.
Mrs. Mazie Roberson, the attorney who represented Mrs. Batiste in her suit for worker's compensation benefits, also testified. She explained that the defendant's claim was settled for less than what the worker's compensation statutes provided for in the event of a work-related accident causing death. The attorney further testified that she and her client were not aware of the medical bill when she negotiated the settlement and, for that reason, no specific portion of the settlement figure represented medical expenses.
On rebuttal, BCMC offered the testimony of Mr. John Lenfant, the attorney who represented BCMC and Aetna in the worker's compensation case. He testified that he prepared the settlement documents, although another attorney was actually present when the documents were signed. Mr. Lenfant testified that when he drafted the settlement document "it was specifically intended that the medical expenses be included as part of the settlement figure that would be paid to Mrs. Batiste."
Mr. Lenfant explained that the medical expenses had been identified to him by Mrs. Roberson in a letter, dated March 6, *186 1989, which proposed a settlement of Mrs. Batiste's claims. He explained that Mrs. Roberson's letter proposed two alternative settlement figures. One figure was $77,061.44, which represented a lump sum to settle all of Ms. Batiste's claims for compensation benefits, medical expenses, funeral expenses, interest and attorney's fees. The second compromise offer included a figure of $22,046.19, which included past compensation benefits, funeral expenses, medical expenses, penalties, and attorney's fees, and an agreement that BCMC/Aetna would pay Mrs. Batiste weekly compensation benefits of approximately $65.00 per week. In the computation of each settlement figure, a claim of $12,016.81 in medical expenses was included.

ASSIGNMENT OF ERROR NO. 1
Mrs. Batiste claims that no valid meeting of the minds existed when she signed the financial responsibility form. She contends her only intent in signing the form was to obtain treatment for her husband; she did not intend to obligate herself for her husband's medical expenses.
Paragraph 5 of the form in question states, "Financial Agreement and Payment Guarantee: Both undersigned patient and the guarantor(s) agree that in consideration of the services to be rendered to the patient, they hereby individually obligate themselves to pay the charges of the hospital in accordance with the regular rates and terms of the Hospital...."
The law provides that a party to a contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that it was not explained, or that he did not understand it. Ciaccio v. Cazayouz, 519 So.2d 799 (La. App. 1st Cir.1987). Additionally, where a contract is clear and explicit as to its terms and it does not lead to absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ.Code art. 2046; Massachusetts Mut. Life Ins. v. Nails, 549 So.2d 826 (La.1989). In this case, the record does not establish that defendant could not read or did not have the ability to understand what she read. Furthermore, the terms of the financial responsibility form clearly obligate the guarantor to pay for medical services rendered to the patient identified on the form. Thus, we find that defendant personally obligated herself to pay for the medical expenses incurred by her husband regardless of any other intentions she may have had when she signed the form. We find this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 2
The defendant contends that no cause or consideration supports her agreement to pay her husband's medical bills because the plaintiff, as her husband's employer, was obligated to pay all medical expenses incurred by an employee for a work-related injury. We need not address whether defendant's agreement to pay the hospital for medical services is supported by adequate consideration because defendant has not proven that BCMC was obligated to pay her husband's medical bills pursuant to the worker's compensation laws. The record of this case is virtually bare regarding the circumstances of Mr. Batiste's illness and death. Therefore, we cannot determine the threshold issue of whether Mr. Batiste's medical care arose out of an injury caused by an "accident arising out of and in the course of his employment" as contemplated within the worker's compensation statutes. Furthermore, since the April, 1989 release agreement clearly stated that the settlement compromised doubtful and disputed claims and that Aetna's payment to Mrs. Batiste was not be construed as an admission of liability, we find that defendant has failed to establish that BCMC was liable pursuant to La.R.S. 23:1031 et seq. for worker's compensation benefits. Accordingly, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 3
The defendant also asserts that any obligation she may owe to the plaintiff was extinguished by confusion since the plaintiff was both the obligor and obligee as to the hospital expenses, citing La.Civ.Code *187 art. 1903. This article provides, "When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion." Defendant contends that plaintiff is an obligor for the medical expenses, due to the employment relationship that existed between plaintiff and her husband prior to his death. Furthermore, defendant contends that plaintiff, as the provider of the medical services is also the obligee as to the debt. Thus, she asserts that plaintiff is placed in the position of owing the obligation to itself and thus, the obligation is extinguished by confusion. We disagree since we find that the concept of confusion does not apply to the facts of this case.
A comment addressing the doctrine of confusion explains it, in part, as follows:
In the civil law, an obligation is said to be extinguished by confusion when a person is placed in the position of owing the obligation to himself.... [T]he fundamental concept is that an obligation ceases to exist when the qualities of debtor and creditor of the same obligation are joined in the same person....
. . . . .
... Since payment or performance by an obligor solely for his own benefit would be only a useless ceremony, the Civil Code provides that an obligation is extinguished as a matter of law upon the joining of both the active and passive sides of the obligation in the same person....
. . . . .
For confusion to occur the same person must acquire the full and perfect ownership of both sides of the obligation by a conveyance which is translative of title. Comment, Extinguishment of Obligations by Confusion, 36 Tul.L.R. 521-523 (1962). Emphasis added and footnotes omitted.
In the present case, plaintiff, as provider of the medical services, is clearly the obligee to which the medical expenses are owed. However, the record does not establish that plaintiff is also the obligor for the full sum of the medical expenses because defendant did not prove that plaintiff would have been obligated to pay worker's compensation payments, if her suit for worker's compensation benefits had not been settled. Although plaintiff was clearly an obligor to defendant for the sum of $35,000.00 as a result of the release executed by defendant, neither the release nor any other evidence of record establishes what portion of this sum was paid to defendant to settle her claim for medical expenses. Although presumably some portion of the $35,000.00 was attributable to defendant's claim for medical expenses, we cannot conclude that any portion of the obligation in question was extinguished. The jurisprudence of our state does not recognize the concept of partial extinguishment of an obligation by incomplete confusion of a principal obligation. See, Dept. of Culture v. Fort Macomb Development, 385 So.2d 1233 (La.App. 4th Cir.), writ denied, 394 So.2d 613 (1980); Also see, Langley v. Police Jury of Parish of Calcasieu, 201 So.2d 300 (La.App. 3d Cir.), writ refused, 250 La. 1034, 201 So.2d 521 (1967). Since we cannot conclude that plaintiff was obligor, pursuant to the settlement agreement, for the full amount of the medical expenses that it seeks to recover in this suit, we must reject defendant's argument that the debt has been extinguished by confusion.

ASSIGNMENT OF ERROR NO. 4
In this final assignment of error, defendant contends that the present suit should be barred by the doctrine of res judicata. She contends that the compromise which settled defendant's suit for worker's compensation benefits was intended to resolve all claims and end all litigation between the parties involved in the previous suit.
We first note that defendant filed a peremptory exception raising the objection of res judicata on the morning of trial in this matter. Although the trial court recognized at the beginning of the trial that an exception had been filed, the court did not rule on the exception and the judgment is silent as to the exception. Thus, we presume that the trial court denied the exception. See, R.A.K. v. Employees Group *188 Ben. Program, 558 So.2d 633, fn. 1 (La. App. 1st Cir.1990).
La.Civ.Code art. 3071 defines a transaction or compromise as "an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." La.Civ.Code art. 3073, addressing the scope of a transaction, provides:
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
Thus, the compromise in question may be construed to preclude plaintiff's suit to recover medical expenses only if the parties clearly intended to include this suit as a subject of the compromise.
We find that the language of the April, 1989 release agreement does not clearly reveal the parties' intention to preclude plaintiff's suit to recover medical expenses. The release was signed only by Ms. Batiste and clearly addresses only Ms. Batiste's release of BCMC and Aetna from potential liability for claims arising from Mr. Batiste's illness and death. No language of the release addresses a waiver or release of claims by BCMC or Aetna. Although the release does not specifically retain plaintiff's right to recover the medical expenses, it also includes no language which specifically precludes this recovery. If the parties intended to preclude plaintiff's suit to recover medical expenses, the parties could have incorporated language in the release agreement providing for a waiver of that future action. See, Ritchey v. Azar, 383 So.2d 360 (La.1980).
Generally, the meaning and intent of the parties to a written contract must be determined by examining the language of the contract and cannot be contradicted by parol evidence. However, an exception is recognized when there is a dispute between the parties regarding the exact matters that were intended to be settled by a compromise. In this instance, parol evidence can be considered. Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983). In the present case, a reference to the parol evidence of Mrs. Batiste and the attorneys who were involved in the settlement proceedings regarding the intent of the parties with respect to the scope of the compromise does not reveal a clear intent to bar action by BCMC to recover the medical expenses.
Considering the language of the release agreement and the parol evidence introduced during the trial of this matter, we find no error in the trial court's implicit denial of the exception raising the objection of res judicata. This assignment of error has no merit.

CONCLUSION
For the above reasons, we affirm the judgment of the trial court. Costs of this appeal are to be paid by defendant-appellant.
AFFIRMED.
SAVOIE, J., dissents and assigns reasons.
SAVOIE, Judge, dissenting.
From the majority opinion, I respectfully dissent.
The defendant contends that no cause or consideration supports her agreement to pay her husband's medical bills because under Louisiana Workers Compensation Law the plaintiff as her husband's employer was obligated to pay all medical expenses incurred by an employee for a work-related injury.
The defendant further contends that any obligation she may owe to the plaintiff was extinguished by confusion since the plaintiff *189 was both the obligor and obligee as to the hospital expenses, citing LSA-C.C. art. 1903. LSA-C.C. art. 1903 states, "When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion." The defendant's contention is correct: the plaintiff owed the defendant for the payment of her husband's medical expenses as his employer under the worker's compensation laws and the plaintiff was owed for the same medical expenses as the provider of the medical treatment. Although the worker's compensation insurer actually paid the defendant the settlement monies, the actual obligor was still the plaintiff hospital, which was also the obligee. In Addison v. Employers Mutual Liability Insurance Co. of Wisconsin, 64 So.2d 484 (La.App. 1st Cir.1953), this court held that where a husband, upon succeeding to his wife's rights in a tort suit against his insurer where the husband was the tortfeasor, became both debtor and creditor as to her damages, the obligation was extinguished by confusion, releasing the insurer from liability. The court reasoned that a liability insurer has no independent liability, but must pay the obligation of the insured, the real debtor.
In the case sub judice, the plaintiff contends that LSA-R.S. 23:1162 sets forth a direct obligation by the insurer to the person entitled to worker's compensation.[1] While this is correct, the insurer has no independent liability; in other words, if the employer is not liable, the insurer is not liable, and thus the rationale of Addison applies. The plaintiff argues that "any hospital employer who happened to treat one of its own workers [has] to pay the worker's medical expenses twice, once on its account and once by the insurance carrier, which charges it a premium." I disagree. Because the obligation is extinguished as a matter of law when the obligor and obligee become the same person, the hospital would not have to pay the medical expenses to the employee if it was treating the employee, nor would the insurer have to pay the medical expenses to the employee.
The majority states that "the defendant did not prove that plaintiff would have been obligated to pay worker's compensation payments." I disagree. The hospital's obligation arose out of settlement. When plaintiff, as the employer, sought expurgation of the obligation placed on it by the Louisiana Worker's Compensation act, through compromise and settlement, it accordingly removed defendant's obligation (and right) to prove coverage under the act.
Thus, the obligation as to the medical expenses was extinguished once the plaintiff accepted the worker's compensation liability for the death of the defendant's husband and thus became both obligor and obligee, at which time the defendant also became both obligor and obligee. (The defendant was an obligor because she obligated herself to pay the entirety of the medical expenses when she signed the financial responsibility form.) Although the parties recognized the medical expenses in their compromise negotiations, they were recognizing an obligation which was extinguished by operation of law. This error relates to the validity of the compromise; according to the jurisprudence, a compromise generally can only be collaterally attacked, unless it is an absolute nullity. Wholesale Distributing Company v. Warren, 84 So.2d 250, 252 (La.App. 2d Cir. 1955). The error as to the existence of the obligation in this case does not make the compromise an absolute nullity. In worker's compensation compromises, such as in this case, a compromise settlement can only *190 be collaterally attacked if fraud or misrepresentation was present.[2]
Should the plaintiff believe that it has grounds to annul the compromise, its recourse is to bring an action for nullity of judgment. See Wholesale Distributing Company, 84 So.2d at 252. However, in the action before us, the plaintiff is seeking to recover on an obligation which was previously extinguished by operation of law through confusion. The plaintiff cannot recover against the defendant on this obligation because it was previously extinguished. The defendant's third assignment of error has merit, and I would reverse the trial court's judgment on this basis.
For the above and foregoing reasons, I respectfully dissent.
NOTES
[1] The terms of the release were presented to the district court in a joint petition for authority to compromise and settle the worker's compensation suit. The trial court approved the compromise settlement and rendered judgment in favor of Ethel Batiste and against BCMC and Aetna in the sum of Thirty-Five Thousand and No/100 ($35,000.00).
[2] Defendant also alleged that the trial judge erred in finding that defendant personally accepted the entire community obligation because she remained in the family home after her husband died. Since we find that defendant personally obligated herself for the medical expenses incurred in the treatment of her husband by signing a hospital form in which she agreed to be personally liable for these expenses, we pretermit this assignment of error.
[1] LSA-R.S. 23:1162 A reads in part as follows:

No policy of insurance against liability arising under this Chapter shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments of the compensation that may be awarded or agreed upon, and that this obligation shall not be affected by any default of the insured after the injury, or by any default in the giving of any notice required by such policy, or otherwise. This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name.
[2] At the time the plaintiff and defendant compromised the defendant's worker's compensation claim, LSA-R.S. 23:1273 B stated,

If the court believes the compromise agreed upon to be fair and equitable, and that it was entered into primarily to avoid or to end litigation, it shall approve the same, and immediately enter it as the judgment of the court, and the said judgment shall not thereafter be set aside except for fraud or misrepresentation made or induced by the employer or his insurer. The judge may however, refuse to approve the settlement if he does not believe that it does substantial justice to the parties.
Presently, LSA-R.S. 23:1272 B provides that "[i]f the hearing officer finds the settlement agreement to be fair, equitable, and consistent with this Chapter, he shall approve it by order, and the order shall not thereafter be set aside or modified except for fraud or misrepresentation made by any party."