873 So.2d 65 (2004)
SIMONS PETROLEUM, INC.
v.
Dane FALGOUT, Sales Tax Collector, for the Sales & Use Tax Department of the Pointe Coupee Parish Police Jury.
No. 2003 CA 0610.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
*67 Stephen Myers, Lafayette, Counsel for Plaintiff/Appellant Simons Petroleum, Inc.
Frederick Mulhearn, Baton Rouge, Counsel for Defendant/Appellee Pointe Coupee Parish Police Jury through its Sales Tax Department.
Before: WHIPPLE, KUHN, and MCDONALD, JJ.
KUHN, J.
Appellant-taxpayer, Simons Petroleum, Inc. (Simons Petro), appeals the grant of a summary judgment affirming the sales tax assessment issued by appellee-tax collector, Pointe Coupee Parish Police Jury through its Sales Tax Department (Pointe Coupee Parish), and awarding the tax collector additional taxes on its reconventional demand plus interest. The tax collector has answered the appeal. We amend and, as amended, affirm.

I. PROCEDURAL BACKGROUND
Simons Petro was notified in a formal assessment letter issued by Pointe Coupee Parish's Sales Tax Director on December 14, 2000, that it owed unpaid sales tax, interest, and penalties for January 1, 1997 through March 31, 1999. The letter advised Simons Petro to either pay the total assessment or to remit the assessed amount under protest and file a lawsuit for recovery of the remitted amount.
On January 4, 2001, Simons Petro filed this lawsuit to recover its payment of $86,135.50, which in its subsequently-filed answer Pointe Coupee Parish admitted was timely remitted by the taxpayer. Joined with Pointe Coupee Parish's answer was a reconventional demand, seeking an award of attorney fees. Simons Petro filed a motion to strike that reconventional demand, which was granted by the trial court.
Pointe Coupee filed a second reconventional demand, again averring entitlement to an award of attorney fees, but also seeking additional taxes. According to the allegations of the tax collector's second reconventional demand, Simons Petro had made sales of off road diesel fuel in Pointe Coupee Parish totaling $2,610,265.94, but had not remitted any local sales tax on the transactions. Stating that its formal assessment letter of December 14, 2000, incorrectly calculated the tax rate at 2%, Pointe Coupee Parish averred that application of the full parish-wide sales tax rate in effect on the dates of the sales transactions resulted in an additional tax, penalties, and interest for the off road diesel fuel sales transactions.
Both the taxpayer and tax collector filed cross motions for summary judgment.
*68 Prior to the hearing, Simons Petro filed peremptory exceptions. After a hearing, the trial court denied Simons Petro's motion for summary judgment and concluded that Pointe Coupee Parish was entitled to the relief it requested. The signed judgment in favor of the tax collector expressly dismissed Simons Petro's lawsuit, affirmed the tax collector's December 14, 2000 assessment of $86,135.50, and awarded additional taxes of $18,080.42 plus interest at the taxpayer's costs. This appeal followed.
On appeal, Simon Petro contends the trial court erred in granting summary judgment in favor of Pointe Coupee Parish because the assessed tax violates a provision in the Louisiana Constitution, which prohibits political subdivisions from levying a tax on motor fuel. Pointe Coupee Parish's answer to this appeal raises the issue of the tax collector's entitlement to attorney fees.

II. SUMMARY JUDGMENT
Appellate courts review summary judgments de novo using the same criteria that govern the trial judge's consideration of whether a summary judgment is appropriate. Guillory v. Interstate Gas Station, 94-1767, p. 5 (La.3/30/95), 653 So.2d 1152, 1155. The summary judgment procedure is favored and shall be construed to accomplish the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

A. Effect of Filed Peremptory Exceptions
The trial court did not expressly rule on the peremptory exceptions filed by the taxpayer objecting to tax collector's second reconventional demand.[1] When a trial court judgment is silent in ruling on an exception, it is presumed that the trial court overruled it. Bogalusa Community Medical Center v. Batiste, 603 So.2d 183, 187 (La.App. 1st Cir.1992); R.A.K. v. Employees Group Ben. Program, 558 So.2d 633, 634 n. 1 (La.App. 1st Cir.1990). Thus, by rendering summary judgment in favor of the tax collector, the trial court implicitly overruled Simons Petro's peremptory exceptions, and because on appeal Simons Petro challenges these rulings, they are properly before us on appeal.[2]

1. Failure to State a Cause of Action
Simons Petro maintains that a tax collector may legally collect only that tax *69 rate in effect at the time of the sales transactions and that, in filing the second reconventional demand, the tax collector attempted to impose a higher tax rate than that in effect during the tax period.
The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. Industrial Companies, Inc. v. Durbin, XXXX-XXXX, p. 6 (La.1/28/03), 837 So.2d 1207, 1213. If there are two or more items of damages which arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss one item of damages. In such a case, there is truly only one cause of action, and a judgment partially maintaining the exception is generally inappropriate. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1236-37 (La.1993).
Our review of the allegations stated in the pleadings establishes that the claim of entitlement to a higher tax rate averred by the tax collector in its reconventional demand amounted to nothing more than a legal conclusion. And while the reconventional demand stated with more specificity the facts upon which Pointe Coupee Parish averred Simons Petro's sales tax liability was based, no new operative facts arising from different transactions or occurrences were alleged. The implicit overruling of Simons Petro's exception of no cause of action by the trial court is correct.

2. Prescription
Simons Petro asserts that the tax collector's attempt to collect at a tax rate in excess of the 2% stated in the December 14, 2000, formal assessment letter is untimely.
According to the relevant portions of Section 13-211 of the Sales and Use Tax regulations of the Code of Ordinances of Pointe Coupee Parish:[3]
(a) Sales and use taxes levied by [Pointe Coupee Parish] shall prescribe as of three (3) years from the thirty-first day of December in the year in which such taxes became due.
(b) The prescriptive period running against any such sales and use tax shall be interrupted by:
(1) The action of the [tax] collector in assessing the amounts of such taxes in the manner prescribed by law.

* * *
(3) Filing of any pleadings by the [tax] collector or by the taxpayer with any state or federal court.
See also La. Const. Art. VII, § 16; La. R.S. 47:1579.
And Section 13-192 of the Code of Ordinances, which sets forth the requisites of notifying the taxpayer, states in pertinent part:
(a) Having assessed the amount determined to be due, the [tax] collector shall send, by registered or certified mail, a notice to the taxpayer against whom the assessment lies, at the address given in the last report filed by *70 the taxpayer.... This notice shall inform the taxpayer of the assessment made against him and notify him that he has thirty (30) calendar days from the date of the notice within which to pay the amount of the assessment or that he may pay the tax under protest and file suit for recovery ....
(b) No assessment made by the [tax] collector shall be final if it is determined that the assessment was based on an error of fact or of law.... An error of law for this purpose means that in making the assessment the collector applied the law contrary to the interpretation followed by the [tax] collector in making other assessments. The determination of an error ... of law under this section shall be solely that of the collector....
See also La. R.S. 47:1565.
The parties do not dispute that the December 14, 2000, formal assessment letter notified Simons Petro of an alleged sales tax liability for the period January 1, 1997 through March 31, 1999. Under Section 13-211(b)(1), that action, taken in accordance with Section 13-192(a), was timely.
But Simons Petro did not receive a subsequent notice issued in accordance with Section 13-192(a), apprising the taxpayer of the tax collector's error of law in the December 14, 2000, formal letter of assessment. Buttressing itself with this lack of notice, Simons Petro suggests that as of December 31, 2000 (which is three years from the thirty-first day of December of 1997), the amount of the assessment in excess of 2% for the period of January 1, 1997 through March 31, 1999, is prescribed.[4] We disagree.
We initially note Simons Petro does not deny having received actual notice with the filing of the reconventional demandof the tax collector's intent to collect an amount calculated at the higher tax rate. Thus, Simons Petro clearly did not suffer any actual prejudice. Section 13-211(b) states that the prescriptive period is "interrupted" by an action of the tax collector in assessing the amounts, which in this case is as set forth in Section 13-192(a). Assuming arguendo that Simons Petro were entitled to a formal assessment letter issued in accordance with Section 13-192(a), i.e., via certified or registered mail, apprising the taxpayer of sales tax liability in an amount calculated at a higher tax rate, and mindful that words of art and technical terms must be given their technical meaning, see La. C.C. art. 11, we note that when prescription is "interrupted," the time that has run is not counted; prescription commences to run anew from the last day of interruption. See La. C.C. art. 3466; see also Louviere v. Shell Oil Co., 440 So.2d 93, 97 n. 8 (La.1983) (explaining that when prescription is interrupted, the prescriptive period starts over in its entirety upon cessation of the interruption).
Because Simons Petro admits, and the record establishes, that the tax collector, having complied with Section 13-192(a), interrupted prescription for the January 1, 1997 through December 31, 1997 tax period under Section 13-211(b)(1) by the December 14, 2000 formal assessment letter, Pointe Coupee Parish would have had until
*71 December 31, 2001, to timely enforce its claim for collection of an amount calculated at the higher tax rate. When it filed its second reconventional demand on December 20, 2001, Pointe Coupee Parish again interrupted the accrual of prescription for the January 1, 1997 through December 31, 1997 tax period. Thus, the implicit overruling of Simons Petro's exception of prescription by the trial court is correct.

B. Merits of Summary Judgment
The parties stipulated that all of the taxes, interest, and penalties at issue in this lawsuit relate to Simons Petro's sales of diesel fuel in Pointe Coupee Parish. The parties refer to the diesel fuel sold by Simons Petro to its customers to operate drilling rigs as "off road diesel fuel," which they agree is "diesel fuel used for purposes other than to power motor vehicles licensed, or required to be licensed, for highway use." Local political subdivisions are empowered to levy and collect a tax upon the sale at retail of tangible property if approved by a majority of the electors. See La. Const. Art. VI, § 29(A). See also Code of Ordinances Section 13-86 (wherein Pointe Coupee Parish imposes a sales tax on tangible personal property). The parties do not dispute that diesel fuel, including off road diesel fuel, is tangible property.
Simons Petro contends the trial court erred in granting summary judgment in favor of Pointe Coupee Parish because by levying the tax on the taxpayer's sales of off road diesel fuel, Pointe Coupee Parish violated the constitutional provision, which prohibits political subdivisions from levying a tax on motor fuel.
Article VII, § 4(C) of the Louisiana Constitution states:
A political subdivision of the state shall not levy a severance tax, income tax, inheritance tax, or tax on motor fuel.
In this appeal, the parties agree, and we find, that the phrase "motor fuel" contained in La. Const. Art. VII, § 4(C) is ambiguous when applied to diesel fuel.
Louisiana Civil Code article 13 instructs that laws on the same subject matter must be interpreted in reference to each other. Thus, we look to the definition of "motor fuel," contained in Part I of Chapter 7, entitled "TAXES ON PETROLEUM PRODUCTS," which is codified in La. R.S. 47:712(1) and means "all volatile gas generating liquids having a flash point below 110 degrees F."
Simons Petro acknowledges that the off road diesel fuel it sold from January 1, 1997 through March 31, 1999, has a flash point above 110 degrees F. That definition, originally enacted by Louisiana Acts 1928, Ex.Sess., No. 6, § 1, is the same definition in effect when the 1974 Constitution was adopted. Thus, we conclude that the off road diesel fuel sold by Simons Petro is not "motor fuel" so as to fall within the ambit of La. Const. Art. VII, § 4(C) prohibiting political subdivisions from levying a tax on motor fuel. Ocean Energy, Inc. v. Plaquemines Parish Government, XXXX-XXXX, pp. 3-6 (La.App. 4th Cir.12/10/03), 863 So.2d 618.
Simons Petro urges that because the definition of motor fuel contained in La. R.S. 47:712(1) is statutorily limited to its use in Part I of Chapter 7 of Title 47 of the Revised Statutes, appreciation for the meaning of "motor fuel" in La. Const. Art. VII, § 4(C) as it applies to diesel fuel requires a review of constitutional intent. Thus, we examine the state of the law prior to the 1974 Constitution.
In this case, the parties agree that the prohibition against political subdivisions taxing motor fuel represented no change in the law from that present before the 1974 Constitution came into effect. See Official
*72 Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, Vol. I, p. 127 (11th day, July 6, 1973).
According to Article XIV, § 24.1 of the Louisiana Constitution of 1921:
No parish, municipality, or other political subdivision, shall levy an excise, license or privilege tax upon gasoline, kerosene or other combustibles used in the generation of motive power.
In Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958) (on rehearing), the court examined whether the City of Baton Rouge violated the Constitutional prohibition of Article XIV, § 24.1 by requiring that gasoline retailers include sales of gasoline and other motor fuels when computing gross sales by which their annual local occupational license tax was measured. Finding that the Article XIV, § 24.1 prohibition was ambiguous, the Roberts court described "excise" taxes as those levied upon the manufacture, sale or consumption of commodities; or upon licenses given to pursue specified occupations; or upon corporate privileges, and concluded that these were in the nature of indirect taxes. Indirect taxes were distinguished by the court from direct taxes, which are those imposed upon a person or upon the property owned by them. 236 La. at 551, 108 So.2d at 121. Given that distinction, the Roberts court held that as used in Art. XIV, § 24.1, the term "excise, license or privilege tax" had no meaning because "such taxes are those levied upon acts or activities and not upon things (such as gasoline) themselves." 236 La. at 551, 108 So.2d at 121-22.
The Roberts court rejected the assertion that the prohibition of Art. XIV, § 24.1 was intended to exempt all activities relating to gasoline, kerosene, or other combustibles used in the generation of motive power from any excise taxation whatsoever and held that the Constitutional prohibition did not include the non-discriminatory occupational license taxes levied by the City of Baton Rouge. In so concluding, the Roberts court reasoned that the constitutional prohibition addressed taxes levied directly upon the sale or consumption of gasoline. At the outset, in a footnote, the court stated that references throughout the opinion to "taxes on `gasoline"' were intended to "include also taxes upon the other motor fuels falling within the prohibition." 236 La. at 550 n. 1, 108 So.2d at 121 n. 1.
Simons Petro relies on Roberts to broadly assert that at the time of the 1974 Constitution, the status of the law was that local political subdivisions were prohibited from levying an excise tax on gasoline, kerosene or other combustibles used in the generation of motive power. Because the prohibition against political subdivisions levying a tax on motor fuel represented no change in the law, Simons Petro reasons, Pointe Coupee Parish is prohibited by Const. Art. VII, § 4(C) from levying a sales tax on the off road diesel fuel it sold from January 1, 1997 through March 31, 1999. We disagree.
The Roberts court held only that Art. XIV, § 24.1 prohibited political subdivisions from directly taxing the sale or consumption of gasoline and, therefore, did not prohibit inclusion of gasoline (and other motor fuels) sales in computing gasoline retailers' gross sales when the City of Baton Rouge determined annual taxes on local occupational licenses. The issue of whether off road diesel fuel is a "motor fuel" or an "other combustible ... used in the generation of motive power" clearly was not before the court. And nothing in the Roberts opinion suggests that the reference to "other combustibles used in the generation of motive power" of Art. XIV, § 24.1 prohibited political subdivisions *73 from levying an excise, license, or privilege tax on diesel fuel used for purposes other than to power motor vehicles licensed, or required to be licensed, for highway use. Thus, appreciation of the state of the law prior to the 1974 Constitution depends on the meaning of "other combustibles used in the generation of motive power" contained in the 1921 constitution.
Simons Petro has supplied us with, and the record contains, no evidence demonstrating that historically "other combustibles used in the generation of motive power" provided for in Art. XIV, § 24.1 could have, as a matter of technology, included diesel fuel used for purposes other than to power motor vehicles and for other transportation uses. Logically, we are convinced that the phrase "generation of motive power" used in our earlier constitution could have only referred to diesel fuel used in the powering of motor vehicles and other transportation. Therefore, La. Const. Art. XIV, § 24.1, prohibited political subdivisions from levying an excise, license, or privilege tax on gasoline, kerosene, or other combustibles used in the powering of motor vehicles and other transportation. Because the off road diesel fuel sold by Simons Petro is used for purposes other than powering motor vehicles and other transportation, it would not have been an "other combustible[ ] ... used in the generation of motive power" under Article XIV, § 24.1 of the 1921 Louisiana Constitution. Given that Article VII, § 4(C) was not intended to change the status of the law in effect before 1974, off road diesel fuel is not a "motor fuel" and may properly be the subject of a political subdivision's tangible property sales tax.
Accordingly, because the term "motor fuel" in La. Const. Art. VII, § 4(C) is ambiguous when applied to diesel fuel, whether we look at the legislatively-enacted definition of "motor fuel" contained in La. R.S. 47:712(1) or we evaluate the intent of the enactment of the constitutional provision, we conclude that political subdivisions are not constitutionally prohibited from levying a tax on the sale of off road diesel fuel. Pursuant to La. Const. Art.
VI, § 29(A), political subdivisions may, therefore, levy and collect a tax for sales of off road diesel fuel. Thus, we hold that La. Const. Art. VII, § 4(C) does not prohibit Pointe Coupee Parish from levying and collecting a tax on the sales of off road diesel fuel by Simons Petro from January 1,1997 through March 31,1999.
Constitutional provisions of the same subject matter should be construed together. As such, the Articles of the Constitution may be taken and construed together as one system and as explanatory of one another, see Succession of Lauga, 624 So.2d 1156, 1166 (La.1993), because when related articles are not construed together, they might become inharmonious and inconsistent. See Gruner v. Police Jury of Claiborne Parish, 119 La. 551, 554, 44 So. 295, 296 (1907); see also La. C.C. art. 13.
With these precepts in mind, we note that our conclusion excluding off road diesel fuel from the prohibition of Const. Art. VII, § 4(C) on political subdivisions levying a tax on motor fuel is further buttressed by examination of La. Const. Art. VII, § 27(A), which creates the Transportation Trust Fund. Under this constitutional provision, purchases of gasoline, diesel fuel, or special fuels, which are subject to excise tax under Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes, are exempt from the state sales tax and any sales tax levied by a political subdivision. See Ocean Energy, Inc., XXXX-XXXX at p. 5, 863 So.2d at 621. If we were to conclude that political subdivisions were unconditionally prohibited from levying a sales tax on diesel fuel under Article *74 VII, § 4(C), the constitutional exemption of Article VII, § 27(A) would be rendered meaningless.[5]
For all these reasons, we conclude that the trial court correctly rendered summary judgment in favor of Pointe Coupee Parish.

III. ATTORNEY FEES
In its answer to this appeal, Pointe Coupee Parish complains of the failure of the trial court to award it attorney fees for collection of the tax on Simons Petro's sales of off road diesel fuel from January 1, 1997 through March 31, 1999.[6]
Political subdivisions like Pointe Coupee Parish are authorized by La. R.S. 33:2841 to enforce the collection of their taxes "in the manner provided for the collection of taxes due to the state." And La. R.S. 47:1512, in Chapter 18 of Subtitle II of Title 47, provides:
The collector is authorized to employ private counsel to assist in the collection of any taxes, penalties or interest due under this Sub-title, or to represent him in any proceeding under this Sub-title. If any taxes, penalties or interest due under this title are referred to an attorney at law for collection, an additional charge for attorney fees, in the amount of ten per centum (10%) of the taxes, penalties and interest due, shall be paid by the tax debtor.
Therefore, the jurisprudence recognizes that the state statute rather than the parish ordinances govern the tax collector's ability to recover attorney fees. See Tigator, Inc. v. Police Jury of West Baton Rouge Parish, 94-1771, p. 14 (La.App. 1st Cir.5/5/95), 657 So.2d 221, 230, writs denied, 95-2126, 95-2172 (La.11/17/95), 663 So.2d 712. Cf. Code of Ordinances Section 13-147 (authorizing the tax collector in the enforcement of the collection of the tax to *75 employee all means prescribed by law and specifically referencing Chapter 18 of Subtitle II of Title 47 of the Louisiana Revised Statutes).
Whether the tax collector initiates a collection action or the taxpayer pays the taxes under protest and files a suit for refund, the taxpayer who failed to timely remit payment of taxes is liable under La. R.S. 47:1512. See United Companies Life Ins. Co. v. City of Baton Rouge, 577 So.2d 195, 196 (La.App. 1st Cir.1991). Having failed to pay taxes for its sales of off road diesel fuel on a monthly basis, see La. R.S. 47:306 and Code of Ordinance Section 13-135, Simons Petro's delinquent payment under protest is insufficient to avoid liability for attorney fees. Thus, the trial court erred in failing to award Pointe Coupee Parish an attorney fee.
Attorney fees calculated in accordance with La. R.S. 47:1512 are, nevertheless, subject to a judicial review of the reasonableness of the fee. See City Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397, 401 (La.1987).[7] Because the record lacks evidence regarding the value and the extent of the services provided by counsel for Pointe Coupee Parish, we remand this case to the trial court, see Louisiana Eggs, Inc. v. Gunter Farms, Inc., XXXX-XXXX, p. 9 (La.App. 1st Cir.4/2/03), 844 So.2d 400, 405, to determine the amount of attorney fees Pointe Coupee Parish is entitled to under La. R.S. 47:1512, whether that amount is reasonable and, if not, to set reasonable attorney fees.

IV. DECREE
The trial court's judgment is amended to award attorney fees to Pointe Coupee Parish and, as amended, affirm. The matter is remanded for the trial court to determine the amount of reasonable attorney fees to which Pointe Coupee Parish is entitled. Appellant-taxpayer, Simons Petroleum, Inc., is taxed with appeal costs.
AMENDED AND, AS AMENDED, AFFIRMED. REMANDED. APPELLANT'S MOTION TO REMAND FOR EVIDENTIARY HEARING ON PEREMPTORY EXCEPTIONS DENIED.
NOTES
[1] Although the parties make countering assertions about the effect of a letter sent to the clerk of the district court by Simons Petro, which ostensibly stated that the peremptory exceptions were "waived," the letter is not contained in the appellate record. But this omission is of no moment because La. C.C.P. art. 966 B permits a court to render summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
[2] While this appeal was pending, Simons Petro filed with this court a Motion to Remand, which was referred to the merits of this appeal. Simons Petro alleges that it is entitled to a remand because of the trial court's failure to expressly rule on the peremptory exceptions, and that absent express rulings by the trial court, the October 15, 2002 judgment is a partial judgment, not immediately appealable because it does not comply with La. C.C.P. art. 1915. But we have concluded that the trial court's implicit rulings on the exceptions are before us on appeal. Therefore, the judgment is not a partial one circumscribed by La. C.C.P. art. 1915. Accordingly, the motion to remand is denied.
[3] Our references throughout this opinion to regulations of the "Code of Ordinances" are to the sections codified in Article III, Chapter 13 of the Code of Ordinances of Pointe Coupee Parish, which is entitled "Sales and Use Tax." We note that according to Section 13-147 of the Code of Ordinances, the tax collector's authority includes all remedies and enforcement and collection procedures prescribed by Chapter 18 of Subtitle II of Title 47 of the Louisiana Revised Statutes. See La. R.S. 47:1501-1691.
[4] Because this lawsuit was instituted by the taxpayer on January 4, 2001, under the plain language of Sections 13-211 (b)(3) and 13-192(b), the December 14, 2000 assessment via certified or registered mail was timely for the tax periods, which commenced on January 1, 1998 and ended on March 31, 1999. Thus, the only portion of the assessment to which Simons Petro's complaint of a lack of Section 13-192(a) notice via certified or registered mail could logically apply would be that which began on January 1, 1997 and ended on December 31, 1997.
[5] Our conclusion that off road diesel fuel is outside the ambit of the prohibition on the "tax on motor fuel" synchronizes La. Const. Art. VII, § 4(C) with the statutory provisions of Chapter 7 of Subtitle II of Title 47 of the Louisiana Revised Statutes, which address taxation of petroleum products. See La. C.C. art. 13. Motor fuel means "all volatile gas generating liquids having a flash point below 110 degrees F," see La. R.S. 47:712(1) and "special fuel" means and includes "all combustible gases and liquids used or suitable for use in an internal combustion engine or motor for the generation of power for motor vehicles" with the exception of motor fuel. La. R.S. 47:801(10). A per gallon tax is imposed on all motor fuels and special fuels. See La. R.S. 47:711, 802, and 820.1. Simons Petro concedes that off road diesel fuel falls outside the statutory definition of motor fuel; and while off road diesel fuel technically is a special fuel in that it is a gas or liquid used or suitable for use in an internal combustion engine, because it is not "sold, used, or consumed in the state of Louisiana for the operation of motor vehicles, licensed or required to be licensed for highway use," per gallon taxes are not imposed on its sales. See La. R.S. 47:802 and 820.1. Thus, if political subdivisions are prohibited by La. Const. Art. VII, § 4(C) from imposing the tangible property sales tax permitted in La. Const. Art. VI, § 29(A), off road diesel fuel sold by Simons Petrowhich is neither a motor fuel nor a special fuel subject to the imposition of per gallon taxesenjoys a tax status that other tangible property does not absent express legislation.
[6] Whether we review the interlocutory judgment of the trial court granting Simons Petro's motion to strike the tax collector's first reconventional demand as part of the appeal of the final judgment, see People of Living God v. Chantilly Corp., 251 La. 943, 947-48, 207 So.2d 752, 753 (1968); Houghton v. Our Lady of the Lake Hosp., Inc., XXXX-XXXX, p. 3 (La. App. 1st Cir.7/16/03), 859 So.2d 103, 105, or we find that by failing to expressly rule on Pointe Coupee Parish's entitlement to attorney fees, the appealed final judgment implicitly rejected the tax collector's claim for attorney fees, see Best Fishing, Inc. v. Rancatore, 96-2254, p. 5 (La.App. 1st Cir. 12/29/97), 706 So.2d 161, 163, we find that the matter is properly before us.
[7] The trial court awarded the amounts of $86,135.50, which the December 14, 2000, formal assessment letter advised Simons Petro was the total outstanding tax, interest, and penalty through that date; and $18,080.42, which the reconventional demand alleged included the additional tax and penalty calculated from application of the difference of the full tax rate in effect on the dates of the sales transactions and the 2% rate at which Simons Petro was assessed in December 2000. Neither the taxpayer nor the tax collector has challenged the quantum of the trial court's awards. Thus, a mechanical application of La. R.S. 47:1512 to the present record yields attorney fees of $10,421.59, excluding interest and additional penalties to those set forth in the December 14, 2000 formal assessment letter.